In re PHILIP SERVICES (DELA-
WARE), INC., et al., Reorga-
nized Debtors.

Philip Services Corporation and Luntz
Corporation, Plaintiffs,

v.

Andrew Luntz, Gregory Luntz, Individu-
ally and in his capacity as Representa-
tive of Certain Shareholders of Pre-
Merger Luntz Corporation, John
Luntz and McDonald & Company Se-
curities, Inc., Defendants.

Bankruptcy Nos. 99–2170 (MFW), 99–
2385(MFW) to 99–2518(MFW).
Adversary No. 99–346(MFW).

United States Bankruptcy Court,
D. Delaware.

Sept. 21, 2001.

■■■■■■■■■■

Gregg M. Galardi, Esquire, Van C. Durrer, II, Esquire, Skadden Arps Slate Meagher & Flom, LLP, Wilmington, DE, Edward J. Meehan, Esquire, Rachel Mariner, Esquire, David E. Carney, Esquire, Skadden Arps Slate Meagher & Flom, LLP, Washington, DC, for Plaintiffs.

J.R. Julian, Esquire, J.R. Julian, P.A., Wilmington, DE, Nathaniel Metz, Esquire, Craig R. Trachtenberg, Esquire, Stuart M. Brown, Esquire, Buchanan Ingersoll, P.C., Philadelphia, PA, for Luntz Defendants.

Kevin Gross, Esquire, Rosenthal, Monhait, Gross.& Goddess, P.A., Wilmington, DE, for Defendant McDonald & Company Securities, Inc.

Robert Brady, Esquire, Joel Waite, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Howard S. Beltzer, Esquire, Evan C. Hollander, Esquire, Daniel P. Ginsberg, Esquire, White & Case LLP, New York City, for The Bank Group.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Plaintiffs' Motion for Judgment on the Pleadings and the Defendants' Response thereto. For the reasons set forth below, we deny the Plaintiffs' Motion.

## I. FACTUAL BACKGROUND

Philip Services Corporation ("PSC") is a Canadian corporation with its principal place of business in Hamilton, Ontario, Canada. In 1997, PSC acquired 100% of the stock of the Luntz Corporation pursuant to a Merger Agreement dated December 30, 1996. PSC issued a Promissory Note due on January 7, 1999, in the amount of $5 million as payment for the stock. John Luntz, Andrew Luntz and Gregory Luntz (collectively "the Luntz Defendants") were former shareholders of the Luntz Corporation and beneficiaries of the Promissory Note.[2] The Luntz Defendants continued as officers and/or directors of the Luntz Corporation after the merger.[3]

On or about August 11, 1997, PSC entered into a credit agreement with certain lenders ("the Pre–Petition Secured Lenders"). The obligation of PSC was guaranteed, *inter alia*, by the Luntz Corporation in the amount of $1.5 billion.

In 1998 the financial condition of PSC and its affiliates deteriorated. On November 13, 1998, PSC announced that it was suspending the payment of interest on the secured debt. That same day, certain of the creditors of PSC and its affiliates announced they would file an involuntary petition in bankruptcy against them if they did not negotiate a pre-packaged plan of reorganization.

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. The Complaint alleges there were other shareholders of the Luntz Corporation who were also beneficiaries of the Promissory Note, namely family members of the Luntz Defendants. It is unclear whether anyone else was a shareholder and what percentage interest the Luntz Defendants had in the Promissory Note.

3. At all relevant times after the merger, John Luntz was a director, Gregory Luntz was an officer, and Andrew Luntz was an officer and a director.

On November 16, 1998, the Luntz Defendants caused the Luntz Corporation to pre-pay the Promissory Note in the amount of $5 million to an account at McDonald & Company Securities, Inc. ("McDonald"), in the name of Gregory Luntz as representative of the former Luntz shareholders.

On June 25, 1999, PSC, the Luntz Corporation and several of their affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code. By Order dated July 29, 1999, the Court approved the Amended Final Stipulation and Order Authorizing and Restricting Use of Cash Collateral and Granting Adequate Protection of Certain Secured Claims ("the Cash Collateral Stipulation"). The Cash Collateral Stipulation provided that if no party filed an action contesting the validity or enforceability of any claim of the Pre–Petition Secured Lenders on or before September 10, 1999 (extended to October 8, 1999, for the Creditors' Committee) then those claims would be allowed without subordination, setoff, counterclaim, defense or objection, for all purposes. (Cash Collateral Stipulation at ¶ 47.) No such action was filed.

On September 24, 1999, PSC and the Luntz Corporation ("the Plaintiffs") commenced this adversary proceeding against the Luntz Defendants and McDonald seeking avoidance of the November 16, 1998, payment as a preference and turnover of the $5 million in the account at McDonald asserting it is property of the estate. The Defendants filed answers asserting, *inter alia,* that the Luntz Corporation was not insolvent at the time of the transfer, because the guarantee of the debt to the Pre–Petition Secured Lenders was itself avoidable as a fraudulent conveyance. On November 9, 2000, the Plaintiffs filed the instant Motion for Judgment on the Pleadings. Responses and replies have been filed.

## II. *JURISDICTION*

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (F), (H), (M), and (O).

## III. *DISCUSSION*

### A. *Standard for Judgment on the Pleadings*

 Under Rule 12(c) of the Federal Rules of Civil Procedure, incorporated by Rule 12(b) of the Federal Rules of Bankruptcy Procedure, a motion for judgment on the pleadings should be granted where the moving party has established on the face of the pleadings that there is no material issue of fact and it is entitled to judgment as a matter of law. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). Like a motion to dismiss under Rule 12(b)(6), we must accept as true the allegations set forth in the Defendants' answers and determine whether the Defendants could prove no set of facts which would support their defenses. *See, e.g., Soto v. PNC Bank (In re Soto),* 221 B.R. 343, 347 (Bankr.E.D.Pa.1998), *citing Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290–91 (3d Cir.1988); *In re J.E. Jennings, Inc.,* 46 B.R. 167, 169 n. 3 (Bankr.E.D.Pa.1985). In making our determination, we may take judicial notice of pleadings of record. *See, e.g., Institute for Scientific Information, Inc. v. Gordon & Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1011 (3d Cir.1991); *Southmark Prime Plus, L.P. v. Falzone,* 776 F.Supp. 888, 893 (D.Del.1991).

In this case, the Plaintiffs' Complaint pleads all the elements necessary for avoidance of a preference: that the $5 million pre-payment was a transfer of property of the Luntz Corporation, to or for the benefit of a creditor (the beneficia-

ries of the Promissory Note), on account of an antecedent debt owed by the Luntz Corporation, while the Luntz Corporation was insolvent, within one year of the bankruptcy filing (since the Luntz Defendants are Insiders as defined by the Bankruptcy Code), which caused the Luntz Defendants to receive more than they would under a chapter 7 liquidation.

The Luntz Defendants' primary defense is that the Luntz Corporation was not insolvent at the time of the transfer. They argue that the Luntz Corporation's guarantee of the debt owed by PSC to the Pre–Petition Secured Lenders is avoidable as a fraudulent conveyance since the Luntz Corporation did not receive fair consideration for that guarantee. For purposes of this Motion, we assume that the facts set forth in the Luntz Defendants' answer are true. The Plaintiffs counter that the Luntz Defendants cannot raise this defense because the issue of the validity of the guarantee was conclusively decided by approval of the Cash Collateral Stipulation.

### B. *Law of the Case*

The Plaintiffs assert that the doctrine of law of the case requires a finding that the Luntz Corporation's guarantee of the debt owed to the Pre–Petition Secured Lenders is valid. They assert that, by approving the Cash Collateral Stipulation, the Court previously determined that the guarantee was valid and not avoidable. Therefore, they assert the law of the case doctrine precludes this Court from revisiting this issue.

■ The law of the case doctrine provides that when a court actually decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. However, that doctrine only applies to issues that were actually litigated and decided by the court.

*See, e.g., AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir.1997) (an appellate court should generally decline to reconsider a question that was decided in a prior appeal); *Brown v. Flater*, 1996 WL 434192, at *2 (E.D.Pa. July 31, 1996) (law of case doctrine only applies to issues of law actually addressed on prior occasion).

■ In this case, the issue of the avoidability of the guarantee was never litigated. Although the Debtors conceded the point, the Luntz Defendants did not: they were not signatories to the Cash Collateral Stipulation. Nor did any other party raise the issue by objection to the Cash Collateral Stipulation or by the filing of a fraudulent conveyance action against the Pre–Petition Secured Lenders. Therefore, the matter has not been previously litigated before the Court. The doctrine of law of the case, therefore, has no applicability.

Further, the law of the case doctrine does not act as an absolute bar on relitigation (in contrast to the doctrines of claim and issue preclusion). Rather the law of the case doctrine merely directs the court's discretion not to rehear matters ad nauseam. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (law of the case doctrine does not limit court's power, rather it merely expresses practice of courts to refuse to reopen what has been decided).

In this case, we are not convinced that the law of the case doctrine warrants that we disallow the defense. We are particularly hesitant to apply the law of the case to a determination made in the main bankruptcy case to an issue raised in an adversary proceeding between two parties, one of whom was not a contestant in the prior matter. The provision in the Cash Collat-

eral Stipulation confirming the validity of the position of the Pre–Petition Secured Lenders was not intended to affect anyone else's rights except vís-a-vís the Pre–Petition Secured Lenders nor was it intended as a final decision for all purposes in the bankruptcy case of issues tangential to the Pre–Petition Secured Lenders' claims.

## C. *The Principles of Estoppel Do Not Bar the Defense*

The Plaintiffs assert that the Defendants are estopped from asserting their solvency defense because the Cash Collateral Stipulation determined that the guarantee was not avoidable. While the Plaintiffs do not articulate what principle of law mandates that the Cash Collateral Stipulation bars the defense, we agree with the Luntz Defendants that none of the estoppel doctrines are applicable here.

### 1. *Equitable Estoppel*

■ Equitable estoppel is not applicable because the Luntz Defendants made no assertion on which the Plaintiffs relied to their detriment. *See, e.g., Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir.1982); *Scarano v. Central R. Co.,* 203 F.2d 510, 512 (3d Cir.1953). At all times in this adversary, the Luntz Defendants have asserted that the guarantee is avoidable as a fraudulent conveyance. The Debtors clearly did not rely on that assertion in taking any action in this case. Even if the Luntz Defendants' silence at the time the Cash Collateral Stipulation was approved could be construed as conceding the validity of the guarantee (which we do not believe it could), the Debtors did not rely on the assertions of the Luntz Defendants when they conceded the validity of the claims of the Pre–Petition Secured Lenders in the Cash Collateral Stipulation. The Debtors had conceded the validity of those claims by signing the Stip-

ulation, long before the deadline for creditors to object to those claims. Therefore, equitable estoppel does not apply.

### 2. *Judicial Estoppel*

■ Nor does judicial estoppel apply. The elements of judicial estoppel are "(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Devan v. CIT Group/Commer. Servs., Inc. (In re Merry–Go–Round Enters.),* 229 B.R. 337, 345 (Bankr.D.Md.1999), *citing Havird Oil Co. v. Marathon Oil Co.,* 149 F.3d 283, 292 (4th Cir.1998).

The Luntz Defendants have not changed their position. They have consistently asserted that the guarantee is avoidable as a fraudulent conveyance. Therefore, judicial estoppel is not applicable. *See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.1988).

### 3. *Res Judicata*

■ Finally, res judicata, or claim preclusion, is not applicable. For res judicata to apply, three elements must be established: (1) a final judgment on the merits of a prior action; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *See, e.g., Board of Trustees of Trucking Employees of New Jersey Welfare Fund, Inc. Pension Fund v. Centra,* 983 F.2d 495, 504 (3d Cir.1992).

In considering the application of res judicata to bankruptcy proceedings, it is important to recognize the difference between bankruptcy cases and typical civil litigation. In the latter, identifying the

parties and the cause of action is relatively easy to do: the parties are those named in the complaint who have been duly served and the issues are those articulated by the pleadings.

In contrast, in bankruptcy cases the parties in interest may include the debtor, all its creditors and all its shareholders. Additionally, a particular matter in a bankruptcy case may affect the debtor's employees, its vendors, its landlords, parties to contracts with the debtor, and numerous other parties. These parties are not typically named in the Motion or Application.

Further the issues that may be litigated in the bankruptcy court are far reaching and include determinations of title to and liens on property, the sale of property, claims against the debtor and others related to the debtor, claims which the debtor may have against others, as well as numerous issues involving the debtor's operations and eventual business and financial restructuring. However, all of these issues (though the bankruptcy court may ultimately hear and decide them) are not expected to be litigated at one time. That is, the fact that a particular party may have an interest in a motion does not require that party to raise all interests or claims that it has in the bankruptcy case generally at the time that the motion is heard. However, this on its face is what res judicata appears to require. To apply res judicata so broadly would bring bankruptcy cases to a halt.

█ Given these unique factors, determining the parameters of litigation in bankruptcy cases, so as to apply the doctrine of res judicata, is often difficult. Recognizing this, the Third Circuit has recently provided some guidance in this area:

> Difficult as it may be to define the contours of a cause of action in a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding *are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time* in the bankruptcy forum.

*Eastern Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 337–38 (3d Cir.2000) (emphasis added).

Applying these concepts to the case at bench, we cannot conclude that the approval of a cash collateral stipulation, even one which confirms the validity of the pre-petition secured lenders' claims, preclusively prohibits the assertion of the debtor's solvency in any preference action which may later be filed by the debtor. This is particularly so because cash collateral stipulations are typically approved in the first month of a bankruptcy case, whereas the debtor has two years to institute preference actions. At the time the cash collateral stipulation is approved, the identity of the preference defendants may not even be known. Further, it is not even certain that the debtor will file any preference actions, since they are often resolved consensually in connection with plan negotiations or resolution of claim objections. Therefore, we conclude that it is not appropriate to give res judicata effect to a cash collateral stipulation in a later adversary proceeding such as the preference action before us.

This is particularly true where the issues decided in the two proceedings are not the same. The Cash Collateral Stipulation in this case dealt only with the rights of the Pre–Petition Secured Lenders vís-a-vís the Debtors and not with the rights of the Debtors vís-a-vís the recipients of alleged preferences. Thus, claim

preclusion does not prevent the prosecution of the defenses by the Luntz Defendants.

Further, contrary to the assertion of the Plaintiffs, we made no specific findings of fact in the Cash Collateral Stipulation that the guarantee was valid and not subject to any defense or avoidance. (*See* Plaintiffs' Opening Brief at p. 13; Reply Brief at p. 4.) Paragraphs F1 and F3 of the Cash Collateral Stipulation which the Plaintiffs cite are *not* findings of fact made by the Court. Instead those paragraphs are preceded by the phrase "the Philip entities acknowledge that...." Therefore, rather than being determinations of the Court that the guarantee is valid and non-avoidable, paragraph F of the Cash Collateral Stipulation was merely an acknowledgment of the Pre–Petition Secured Lenders' secured position by the Debtors.

While the Cash Collateral Stipulation did provide that the Pre–Petition Secured Lenders' claims would be allowed (unless an action contesting them was filed within a set period of time), that does not preclude the Luntz Defendants from raising the invalidity of the guarantee defensively in this adversary. Permitting the defense will have no effect whatsoever on the claims of the Pre–Petition Secured Lenders. Even if we determine in the adversary proceeding that the guarantee is a

fraudulent conveyance, it will not result in an avoidance of the guarantee. It will merely result in a determination that the $5 million transfer was not a preference. Therefore, the Pre–Petition Secured Lenders' claims are not affected by the defense raised in the adversary.[4]

In this regard, this case is analogous to cases where a creditor misses a bar date for filing a proof of claim. While the creditor is precluded from asserting that claim affirmatively, it is not barred from raising its claim as a setoff or defense to an action by the debtor. *See, e.g., Turner v. United States (In re G.S. Omni Corp.),* 835 F.2d 1317, 1318–19 (10th Cir.1987); *Stratton v. Equitable Bank, N.A.,* 104 B.R. 713, 735 (D.Md.1989), *aff'd* 912 F.2d 464 (4th Cir.1990); *Calderone v. Mancino (In re Calderone),* 166 B.R. 825, 830 (Bankr. W.D.Pa.1994). Similarly, the failure to file a proof of claim by the bar date does not affect a creditor's right to enforce its lien, which passes through the bankruptcy case unaffected. *See, e.g., Lindsey v. Federal Land Bank of St. Louis (In re Lindsey),* 823 F.2d 189, 190 (7th Cir.1987); *Keeler v. Academy of Am. Franciscan History, Inc. (In re Keeler),* 257 B.R. 442, 448 (Bankr. D.Md.2001). Nor does the failure to file a proof of claim preclude a creditor from proceeding with an action against the debt-

---

4. It is also significant that the Cash Collateral Stipulation did not grant the Pre–Petition Secured Lenders a security interest or superpriority position in avoidance actions. Therefore, their replacement collateral is not affected by the defense, and they have no direct interest in any recovery by the Debtors in the adversary proceeding. Although the Pre–Petition Secured Lenders filed a motion to intervene in the adversary proceeding, that motion was denied. In doing so, we rejected the argument of the Pre–Petition Secured Lenders that they had an interest in the proceeding because they were to own 91% of the stock in the reorganized debtors under the proposed plan of reorganization. As share-

holders, their interests are adequately represented by the Debtors. Further, we rejected their argument that their pre-petition liens in the Debtors' assets gave them a security interest in the preference recovery. The pre-petition lien did not remain on the $5 million when it was paid by the Luntz Corporation to the Luntz Defendants pre-petition and the Cash Collateral Stipulation expressly precluded avoidance actions from their post-petition liens. However, we did allow the adversary proceeding to be consolidated with the hearing on the objection filed by the Pre–Petition Secured Lenders to the Luntz Defendants' claims.

or to the extent it seeks only to recover from insurance proceeds. *See, e.g., IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 733 (7th Cir.1991).

Consequently, we conclude that the failure to object to the claims of the Pre–Petition Secured Lenders does not preclude the Luntz Defendants from raising as an affirmative defense in the preference action against them that the transaction with the Pre–Petition Secured Lenders constituted a fraudulent conveyance, so long as they are not seeking affirmative relief against the Pre–Petition Secured Lenders.

In a case remarkably similar to this one, the Court held that approval of a cash collateral stipulation between the debtor and its secured lender did not preclude a later adversary proceeding against parties other than the lender which sought to avoid as a fraudulent conveyance the leveraged buyout financed by the lender. *See, e.g., Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Bevs., Inc.)*, 238 B.R. 558, 578 (Bankr.S.D.N.Y.1999). In *Everfresh* the cash collateral stipulation approved by the Court also had a deadline by which parties had to contest the validity of the lender's liens, which no one did. Nonetheless, in allowing the adversary to proceed against the other parties, the Bankruptcy Court held that:

> The Order was intended to protect [the lender] from future attacks as to its rights as a secured lender. It was never intended to insulate every conceivable party to the leveraged buyout transaction from liability and that question was never before the Court. This conclusion is supported by the fact that only the Debtors and [the lender] signed the stipulation. If the rights of others were being affected by the stipulation, they would have, by necessity, been parties to

the stipulation.... Furthermore, even if my Order could arguably be interpreted the way the Defendants contend, such an interpretation would lead to an absurd and unfair result.

238 B.R. at 578.

Just as in the *Everfresh* case, our approval of the Cash Collateral Stipulation between the Debtors and the Pre–Petition Secured Lenders was intended only to protect the interests of the Pre–Petition Secured Lenders. The affirmative defenses asserted by the Luntz Defendants do not seek to attack the claims of the Pre–Petition Secured Lenders. Therefore, we conclude that the approval of the Cash Collateral Stipulation was not a determination of the defenses raised by the Luntz Defendants and res judicata does not preclude our consideration of them in this adversary.

### D. *Section 547(c) Does Not Bar Other Defenses*

The Luntz Defendants have raised other affirmative defenses, such as laches, unclean hands and setoff. The Plaintiffs assert that the only defenses which may be raised to a preference complaint are those articulated in section 547(c). *See, e.g., McColley v. M. Fabrikant & Sons, Inc. (In re Candor Diamond Corp.)*, 26 B.R. 850, 851 (Bankr.S.D.N.Y.1983) and cases cited therein. We disagree.

Section 547(c) by its very terms does not purport to list the only defenses to a preference action. The Bankruptcy Code itself contains other express defenses to such an action. For example, the most obvious defense to a preference action is the statute of limitations, which is contained in section 546(a)(1), not in section 547(c). Further, section 546 lists a number of other limitations on avoidance actions which is as applicable to section 547 as to other provisions of the Code. Similar-

ly, section 553 of the Bankruptcy Code expressly preserves setoff rights, notwithstanding anything else in the Code. Consequently, we reject the Plaintiffs' assertion that as a matter of law the Defendants may not raise any affirmative defenses that are not contained in section 547(c). Their Motion for judgment on the pleadings on this point is also denied.

## IV. CONCLUSION

For the above reasons, we deny the Plaintiffs' Motion for Judgment on the Pleadings.