**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 16-4145

FREDERICK M. WEINBERG; JANICE T. NINI,
                                                                      Appellants

v.

SCOTT E. KAPLAN, LLC

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-16-cv-04913)
District Judge:  Honorable Anne E. Thompson

Argued on July 12, 2017

Before:  GREENAWAY, JR., SHWARTZ and RENDELL, <u>Circuit Judges.</u>

(Opinion filed: August 21, 2017)

Peter A. Ouda, Esq. **ARGUED**
19 North Bridge Street
Somerville, NJ 08876

Counsel for Appellant

William G. Wright, Esq. **ARGUED**
Capehart Scatchard
Suite 300 S
8000 Midlantic Drive

Laurel Corporate Center, Suite 300S
P.O. Box 5016
Mount Laurel, NJ 08054

Counsel for Appellee

---

O P I N I O N*

---

**RENDELL**, <u>Circuit Judge</u>:

In this appeal, Dr. Frederick M. Weinberg and his wife Janice T. Nini (the "Plaintiffs") challenge the District Court's dismissal of their malpractice lawsuit against their former chapter 11 bankruptcy attorney, Scott E. Kaplan (the "Defendant"). The District Court ruled that the Plaintiffs' lawsuit was barred by previous litigation before the Bankruptcy Court under the doctrine of res judicata. Because we agree that the Plaintiffs should have litigated their malpractice claim before the Bankruptcy Court, we will affirm.

I.[1]

The Plaintiffs hired the Defendant in November 2012 and shortly thereafter filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. In the instant complaint (the "Complaint"), they allege two incidents of malpractice arising from this engagement.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We accept as true the factual allegations in the Complaint. We also take notice of the Bankruptcy Court's docket, which we use to provide temporal context to the various allegations of malpractice. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

2

The first such incident stems from an allegedly deficient response to a creditor's motion for relief from the automatic stay. In January 2013, the Plaintiffs' largest creditor moved for relief to continue pursuing pre-petition state court foreclosure remedies against the Plaintiffs (the "January 2013 Relief from Stay Motion"). The Bankruptcy Court granted the motion as to the Plaintiffs' residential property. The Complaint alleges the Defendant "confused" the court by his arguments in his opposition. A20, ¶11. After the order issued, they contend that the Defendant ignored their pleas to file for reconsideration, even though they brought to his attention "errors made by the court on certain keys [sic] factual issues" (the Complaint does not specify which facts). A18, ¶4. The Defendant did eventually move for reconsideration. The Bankruptcy Court acknowledged it had "made a clear error of fact when it granted stay relief as to the incorrect property" and granted the motion for reconsideration. A19, ¶8.

In June 2013, a month after the District Court wrongly granted stay relief, the Defendant applied to the Bankruptcy Court for compensation (the "June 2013 Fee Application") in the amount of $32,047.16—his only such application in the case. The June 2013 Fee Application specifically requested fees for the work performed opposing the January 2013 Relief from Stay Motion. The Plaintiffs did not contest or otherwise appear at the hearing on this application. Still, the Bankruptcy Court, in allowing the Defendant's fees and expenses, *sua sponte* reduced the award to $27,099.66 (the "July 2013 Fee Order").

The second incident of alleged malpractice arises from a series of purported omissions that began in June 2013. The Complaint alleges that the Defendant was

responsible for, but failed to file, Chapter 11 monthly operating reports. These omissions culminated in the conversion of the case to a Chapter 7 liquidation upon a motion by the U.S. Trustee. The Defendant also allegedly failed to oppose this motion. The Plaintiffs then fired the Defendant and hired another attorney, Richard Kwasny, who moved for reconsideration, which was granted. Both alleged incidents, according to the Complaint, required the Plaintiffs to "expend[] great sums of money" on additional legal fees and expenses. A21, ¶13.

The case continued for approximately two more years after the Defendant's exit. Relevant to this appeal, in March 2014, the Plaintiffs fired Kwasny and hired the Trenk, Dipasquale firm, who then negotiated and filed a proposed plan of reorganization (the "Plan"). That Plan specifically listed the Defendant's allowed administrative claim for fees (arising from the June 2013 Fee Application) and granted the Defendant a right to payment on the effective date of the plan. In March 2015, the District Court confirmed the Plan without objection.

Before the Plan was confirmed, the Defendant sought to collect his fees by filing a motion to compel payment pursuant to the July 2013 Fee Order. The Plaintiffs were successful in securing adjournments of the hearing on that motion until after their Plan was confirmed. Thereafter, the Plaintiffs objected to payment indicating that they were prepared to file a malpractice action. The Defendant withdrew that motion to compel payment and filed another motion to compel payment in September 2015. Ultimately, the Bankruptcy Court granted the Defendant's motion noting that it "was surprised that [the Plaintiffs] didn't file an objection [to the June 2013 Fee Application] because [it]

4

gathered that the [the Plaintiffs] were unhappy with [the Defendant's] services." A115.[2] Nevertheless, because there was a "duly filed and awarded administrative claim that should have been paid pursuant to the terms of the plan on the effective date," and "because his fees were not objected to and the fee Order was not appealed," he was "entitled to the relief he requests." A115.

In June 2016, the Plaintiffs filed this malpractice Complaint in the Superior Court of New Jersey, Law Division, and the Defendant promptly removed to District Court. The Defendant moved to dismiss the Complaint on the ground that the claim was barred under the doctrine of res judicata. The District Court agreed, reasoning that the Plaintiffs' Complaint was barred by res judicata because the "Plaintiffs' claims . . . are precisely the same claims that it could have, but did not, raise prior to the Bankruptcy Court's confirmation of the Plan." A11. Weinberg now timely appeals this ruling and asks us to reverse the District Court's judgment. We decline to do so.

---

[2] The Bankruptcy Court granted this motion "without prejudice" to the Plaintiffs' threatened malpractice claim. A116. This ruling has no bearing on our analysis, however, because the preclusive effect of the Bankruptcy Court's earlier order was not at issue in that proceeding.

II.[3]

Generally speaking, a suit is barred where there is (1) a final judgment on the merits in a prior action involving (2) the same parties (or their privies) and (3) the same cause of action. *See Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). The parties agree that the first two elements of this test are satisfied in this case, but they dispute the third prong—whether the "same cause of action" underlying the Complaint was presented to the Bankruptcy Court.

Typically, under this third prong, we ask whether there is an "essential similarity of the underlying events giving rise to the various legal claims." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). But where the prior litigation arises during a bankruptcy case, we have cautioned that the claim preclusion analysis is more

---

[3] Because the Plaintiffs' claim stems from the Defendant's representation during their Chapter 11 case, their claim "aris[es] in" or is "related to" the Chapter 11 case under 28 U.S.C. § 1334(b). *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1244 (3d Cir. 1994) (finding "arising in" jurisdiction over separately-filed malpractice action because of the "[legal malpractice] claims' connection with the debtors' bankruptcy petitions"). Consequently, the District Court had jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over an order dismissing a complaint under Rule 12(b)(6). With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; we may also look beyond the complaint to public records, including judicial proceedings. *See Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426.

"complicated." *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir. 2000). Unlike conventional civil litigation, a bankruptcy case is "not a discrete lawsuit" that arises from a discrete event; rather it is a "forum in which any number of adversary proceedings, contested matters, and claims will be litigated." *Id.* As such, an order confirming a plan of reorganization does not bar "every conceivable claim that could have been brought in the context of a bankruptcy case over which the court would have had jurisdiction." *Id.* Instead, we must look to the individual proceedings within the bankruptcy and ask whether the "the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *Id.* at 337–38. This articulation of the "same cause of action" test is nothing more than the essential similarity test applied to the unique circumstances of the bankruptcy context. *See id.* at 338 n.14.

Here, we agree that the Complaint is barred under this standard, although in so finding we parse the proceedings before the Bankruptcy Court to a finer degree than did the District Court.[4] We focus on two such proceedings that give rise to claim preclusion in this case: (1) the June 2013 Fee Application proceeding and (2) the 2015 Plan confirmation proceeding and related motions to compel payment.

To begin, the June 2013 Fee Application proceeding squarely presented the issue of the Defendant's provision of legal services up to that point in time because it sought

---

[4] "An appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment." *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1145 n.1 (3d Cir. 1983).

compensation for opposing the January 2013 Relief from Stay Motion, which the Complaint now alleges was deficient. Further, the application triggered a contested matter under 11 U.S.C. § 330, *see* Fed. R. Bankr. P. 2016, and resulted in an order awarding the Defendant fees for that work. Section 330 of the Code specifically obligated the Bankruptcy Court to inquire into the nature and quality of these services, including whether "[the Defendant] . . . demonstrated skill and experience in the bankruptcy field." 11 U.S.C. § 330(a)(3)(E). The instant malpractice claim similarly turns on whether the Defendant breached the duty of care he owed to his client in that situation, *see McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001) (citing *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1070 (N.J. 1996)), and requires consideration of "evidence demonstrating that [the defendant's] conduct failed to meet the appropriate standard of care," *Gans v. Mundy*, 762 F.2d 338, 343 (3d Cir. 1985). Thus, these proceedings involved the same issue, and by allowing compensation under § 330, the Bankruptcy Court impliedly found that the Defendant's services in responding to the January 2013 Relief from Stay Motion were at least acceptable.

In light of this, we conclude it was "unreasonable" for the Plaintiffs not to have raised their claim then, especially given their knowledge of the claim and the ample procedural mechanisms for them to do so. *See* Fed. R. Bankr. P. 7001(1) (permitting the filing of adversary complaints "to recover money"); Fed. R. Bankr. P. 3007(b) (noting that a party "may include [an] objection [to a contested matter] in an adversary proceeding"); *id.* advisory committee's note to 2007 amendments ("If a claim objection is filed separately from a related adversary proceeding, the court may consolidate the

8

objection with the adversary proceeding under Rule 7042."); *see also Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490–93 (D.C. Cir. 2009); *Grausz v. Englander*, 321 F.3d 467, 475 (4th Cir. 2003); *In re Iannochino*, 242 F.3d 36, 47 (1st Cir. 2001); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 388–89 (5th Cir. 2000).[5] The Plaintiffs counter that they did not know the *extent* of their damages at that time. But this is no excuse for failing to oppose the application or apprise the Bankruptcy Court of the claim. Had the Plaintiffs done so, the court could have stayed the contested fee application or permitted discovery on the matter. *See* Fed. R. Bank. P. 9014.

Similarly, the plan confirmation litigation and intertwined motions to compel payment provided the Plaintiffs additional opportunities to either challenge the earlier July 2013 Fee Order or raise the Defendant's alleged failure to file monthly operating reports. The Plaintiffs proposed a Plan that listed the Defendant's allowed claim for fees and provided for a right to payment. Yet they did not object to confirmation of that Plan, disclose to creditors their intent to file a malpractice action in the Plan itself or in the required disclosure under 11 U.S.C. § 1125, amend their asset schedules under 11 U.S.C. § 521 to reflect their contingent claim against the Defendant, or otherwise make their discontent known to the Bankruptcy Court. Further, although they had the opportunity to do so, the Plaintiffs did not object to the Defendant's motion to compel payment of his fees until the day after their plan was confirmed. Both of these proceedings touched again on the propriety of the Defendant's services to the Plaintiffs.

---

[5] We cited *In re Intelogic Trace, Inc.* approvingly in *Eastern Minerals*. *See E. Minerals*, 225 F.3d at 339 n.16.

This curious sequence of events, in our view, tends to show that the Plaintiffs sought to avoid litigating their malpractice claim until after the conclusion of the bankruptcy case. Such tactics are, in a word, concerning. For one, the Plaintiffs' malpractice claim, which accrued as late as December 2013, was property of the bankruptcy estate. *See* 11 U.S.C. § 1115(a) ("In a case in which the debtor is an individual, property of the estate includes . . . all property . . . that the debtor acquires *after the commencement of the case* but before the case is . . . converted." (emphasis added)); *In re Cantu*, 784 F.3d 253, 257–58 (5th Cir. 2015). The estate—and not the Plaintiffs individually—suffered the harm of the Defendant's malpractice. As a result, the Plaintiffs' failure to raise the claim during the course of the bankruptcy deprived *the estate* of potential assets that could have been used to satisfy other claims. It also would seem to have deprived creditors of the opportunity to negotiate over the disposition of those funds when considering the Plaintiffs' proposed plan. When pressed at oral argument, Plaintiffs' counsel could not persuasively explain why the Plaintiffs, in their individual capacities, should now be entitled to these damages.

Moreover, the efficient use of judicial resources favors litigating claims of malpractice against estate professionals during the bankruptcy. The Bankruptcy Court was in the unique position to judge the Defendant's alleged malpractice, having been intimately familiar with the parties and the filings throughout the case. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (noting goal of claim preclusion is to "avoid piecemeal litigation and conserve judicial resources" (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)). Also, the Bankruptcy Judge approved the

retention of the Defendant and had an interest in the way in which he represented the debtors.

To be clear, we do not say that in all instances a debtor who fails to disclose the existence of a cause of action against his estate professional will be barred from pursuing it in a post-bankruptcy action.[6] The above observations merely bolster our conclusion that, on the facts of this case, the June 2013 Fee Application, the Plan (which listed the Defendant's claim), and the Defendant's motions to compel payment of his fees operate to bar the Plaintiffs' claim at this late juncture. These various proceedings put the issue of the Defendant's malpractice before the Bankruptcy Court to such a degree that it was "unreasonable not to have brought [this malpractice claim] at the same time in the bankruptcy forum." *Eastern Minerals*, 225 F.3d at 338. Accordingly, we will affirm the judgment of the District Court.

---

[6] For example, a plaintiff may not be aware that she has been harmed until after the bankruptcy concludes or there may have never been a fee application that raised the issue. Suffice it to say that this is not the case here. Moreover, we note that other doctrines, such as judicial estoppel, might or might not separately bar such claims. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419–20 (3d Cir. 1988). We do not reach the Defendant's alternative argument to this effect because he failed to raise it before the District Court.

11